**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

DERRICK DEON VINCENT,

Petitioner,

vs.

E. K. MCDANIEL, et al.,

Respondents.

Case No. 2:10-cv-01991-APG-NJK

**O R D E R**

Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#5), respondents' answer (#9), and petitioner's traverse (#13). The court finds that petitioner is not entitled to relief, and the court denies the petition.

## I. Facts and Procedural History

On the morning of July 21, 2007, Yolanda Chacon locked herself out of her condominium. She called a locksmith. While waiting for the locksmith, she noticed petitioner loitering in her apartment complex. Petitioner was wearing a red shirt and a hat, among other items of clothing. After the locksmith, Oren Cohen, arrived, she needed to sign papers that authorized the locksmith to open the door. She set her purse and her briefcase down on a ledge. Petitioner then snatched both purse and briefcase, and he ran away. Chacon and the locksmith pursued petitioner. After a struggle, petitioner dropped the purse and fled with the briefcase. Chacon and Cohen called the police.

Keith Bryant, a police officer, went to a neighboring condominium complex that was in the direction petitioner had fled. As he was entering the apartment complex, he noticed a car exiting.

Two people were in the vehicle. Petitioner was driving, and he matched the description of the robber, except that he was wearing neither shirt nor hat. Bryant followed the car, signaled it to pull over, and the driver complied. When Bryant walked up to the car, petitioner drove away quickly. After a chase in car and on foot, petitioner was taken into custody. The other person in the car was not found. Police also recovered Chacon's briefcase. A police officer asked petitioner why he snatched the bag. Petitioner said that the person he was with told him that there was marijuana in the bag, and that was why he grabbed it. Ex. 27, at 46 (#12-5). The subsequent investigation found latent fingerprints on the car that petitioner was driving and a hat near the location of the robbery.

The grand jury indicted petitioner on December 7, 2007. Ex. 4 (#11). Petitioner was arrested on February 11, 2008. Ex. 6 (#11). He first appeared in state district court on February 14, 2008. Ex. 1, at 2 (#11). Arraignment was continued through several hearings until March 6, 2008; the parties were litigating over whether petitioner and his counsel received notice of the grand jury hearing. Petitioner invoked his statutory right to a trial within 60 days pursuant to Nev. Rev. Stat. § 178.556(1). Id. at 12 (#11). Trial eventually was set for April 9, 2008. Id. at 15 (#11).

Shortly before the scheduled trial date, petitioner's counsel, Christy Craig-Rohan of the county public defender, learned about the recovery of the fingerprints. The fingerprints never had been tested. After much argument over whether the prosecution should have disclosed the recovery of the fingerprints and tested the fingerprints earlier, the court continued the trial on the defense's request to allow for prompt testing of the fingerprints. The request was reluctant because petitioner did want to proceed to trial. On the other hand, the fingerprint testing might show that petitioner was not the driver of the car. The court also allowed the prosecution to compare petitioner's DNA with DNA recovered from the hat found near the location of the robbery. The court re-scheduled the trial for May 19, 2008.

The test results were not in petitioner's favor. His DNA matched the DNA recovered from the hat. Ex. 27, at 72 (#12-5). The fingerprints taken from the driver-side front door of the car were his, and the fingerprints taken from the passenger-side front door were from two other people. Ex. 27, at 102 (#12-5). One of those people was James Giles, whom the county public defender already was representing in an open case.

The court allowed the public defender to withdraw from representation of petitioner because of the conflict of interest. The court appointed John Lukens to represent petitioner. Lukens and his colleague, James Kent, needed additional time to become familiar with the case. The court rescheduled trial for June 16, 2008. Lukens then became ill. The court set trial for August 25, 2008. When it became clear the Lukens was unable to go to court, the court appointed Martin Hart to represent petitioner.

The trial occurred as scheduled. Petitioner was found guilty of failing to stop on the signal of a police officer and of robbery. Ex. 42 (#12). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 66 (#12).

Petitioner then commenced this action. The petition (#5) contained two grounds. Ground 1 is a claim that petitioner's constitutional right to a speedy trial was violated. Ground 2 was a claim that petitioner's trial was held in violation of the 60-day limit of Nev. Rev. Stat. § 178.556(1). The court dismissed ground 2 because a violation of state law is not addressable in federal habeas corpus and because, to the extent that petitioner claimed a violation of his federal constitutional right to a speedy trial, the ground duplicated ground 1. Order (#4). Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for the dismissal of ground 2.

## II. Standard of Review

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 131 S. Ct. at 785. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 131 S. Ct. at 786.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id., at 786-87.

## III. Discussion

Ground 1 is a claim that the delay in petitioner's trial was a violation of his constitutional guarantee to a speedy trial. Petitioner presented the same claim to the Nevada Supreme Court, which held:

> The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend VI. In assessing a claim that a defendant has been deprived of his constitutional right to a speedy trial, the court must weigh four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. See Barker v. Wingo, 407 U.S. 514, 530 (1972); see also Doggett v. United States, 505 U.S. 647, 651 (1992); Furbay v. State, 116 Nev. 481, 484-85, 998 P.2d 553, 555 (2000). The four factors "must be considered together, and no single factor is either necessary or sufficient." Sheriff v. Berman, 99 Nev. 102, 107, 659 P.2d 298, 301 (1983). But the length of the delay must be at least presumptively prejudicial before further inquiry into the other factors is warranted. Barker, 407 U.S. at 530. There is no established time period that automatically constitutes

> undue delay; each case must be analyzed on an ad hoc basis. Id. at 530-31; see also State v. Fain, 105 Nev. 567, 569-70, 779 P.2d 965, 966-67 (1989) (holding that a 4 ½ year delay did not violate the appellant's right to a speedy trial because no specific witness, piece of evidence, or defense theory was lost due to the delay).
>
> In the instant case, the district court found that although the State may have been responsible for the initial continuance and delay in bringing Vincent to trial, Vincent failed to demonstrate that he was prejudiced in any meaningful way. See United States v. Tedesco, 726 F.2d 1216, 1221 (7th Cir. 1984) (explaining that "'[p]rejudice' is not caused by allowing the Government properly to strengthen its case, but rather by delays intended to hamper defendant's ability to present his defense"). Further, even assuming, without deciding, that the State was, in fact, responsible for the initial continuance requested by the defense, that delay totaled only the first, approximately, 13 days of the 3 ½ month delay—all subsequent continuances were requested by the defense due to an unanticipated conflict of interest, the withdrawal of Vincent's public defender from the case and the appointment of new counsel, the need for additional trial preparation time, and health reasons. Therefore, we conclude that Vincent's right to a speedy trial was not violated and that the district court did not err by denying his motion to dismiss.

Ex. 66, at 2-3 (#12).

This court does not see any way that petitioner could have avoided a delay to his trial, even if the prosecution told the defense attorney on the day of petitioner's initial appearance in the state district court about the collection of the fingerprints. Nothing up to the point of the defense request to compare the fingerprints indicated that identity of the robber and driver would be at issue. To summarize, Chacon and Cohen both saw petitioner during the robbery, Officer Bryant saw petitioner leave a nearby condominium complex, other police officers arrested petitioner and found Chacon's briefcase, and petitioner admitted taking the bag. What led to most of the delay in the trial was not the determination that petitioner's fingerprints were on the car, but the unexpected finding that the fingerprints of another client of the county public defender were on the car. At that point, it became necessary for the public defender to withdraw, for the state court to appoint new counsel, and for the state court to give new counsel additional time to become familiar with the case. Even if the defense counsel learned on February 14, 2008, about the collection of fingerprints and requested a test of those fingerprints, it was unavoidable that petitioner's trial would have been delayed.

This court also does not see how petitioner could have suffered prejudice because the DNA comparison linked petitioner to the hat found near the location of the robbery. It is true that the comparison would not have occurred if the trial had occurred as originally scheduled. However, for

the reasons noted just above, the trial never would have occurred as originally scheduled. The defense counsel would have requested a comparison of the fingerprint evidence, regardless of when defense counsel learned about the evidence. Once the defense counsel wanted a fingerprint comparison, thus making identity an issue, the prosecution would have requested petitioner to provide a sample for a DNA comparison. Then, once the fingerprint results were known, the public defender would have needed to withdraw, and the trial would have been delayed. Additionally, the identifications of petitioner, the discovery of Chacon's bag with petitioner, and petitioner's admission that he took the bag were overwhelming evidence by themselves of his guilt.

The Nevada Supreme Court identified the governing principle of federal law, Barker v. Wingo. The Nevada Supreme Court also applied all of the factors in its analysis. Its conclusion that an unexpected need to change petitioner's attorney, not the prosecution, was the main reason behind the delay for trial, was a reasonable conclusion.

Ground 1 is not a claim that the prosecution withheld potentially exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). Petitioner makes such an argument in the traverse (#13) and in the unauthorized supplemental traverse (#17), but reply briefs are not the correct pleadings in which to present new claims. Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994). The court disregards petitioner's attempts to create a Brady claim.

To appeal the denial of a petition for a writ of habeas corpus, Petitioner must obtain a certificate of appealability, after making a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000). Reasonable jurists might debate the court's conclusion on ground 1, and the court will issue a certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED**. The clerk of the court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** on whether the court was correct in its ruling that the Nevada Supreme Court's denial of petitioner's speedy-trial claim was a reasonable application of clearly established federal law.

Dated: December 9, 2013.

ANDREW P. GORDON
United States District Judge